**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Dennis Wondrak** | ) | **Case No.** |
| **8421 Grand Division Ave.** | ) | |
| **Cleveland, OH 44144** | ) | **Judge:** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Cleveland Metropolitan School** | ) | |
| **District** | ) | |
| **c/o Board of Education** | ) | |
| **Administration Building** | ) | |
| **1111 Superior Ave. E., Suite 1800** | ) | |
| **Cleveland, OH 44114** | ) | |
| | ) | |
| **And,** | ) | |
| | ) | |
| **Rhodes CCA** | ) | |
| **5100 Biddulph Ave.** | ) | |
| **Cleveland, OH 44144** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **Consuela Townsend** | ) | |
| **Rhodes CCA** | ) | |
| **5100 Biddulph Ave.** | ) | |
| **Cleveland, OH 44144** | ) | |
| **And,** | ) | |
| | ) | |
| **Lorenzo Russell** | ) | |
| **1111 Superior Ave.** | ) | |
| **Cleveland, OH 44115** | ) | |
| **And,** | ) | |
| | ) | |
| **Alyssa Starinsky** | ) | |
| **Rhodes CCA** | ) | |
| **5100 Biddulph Ave.** | ) | |
| **Cleveland, OH 44144** | ) | |
| | ) | |
| **And,** | ) | |
| | ) | |
| **Michelle Allen** | ) | |
| **Rhodes CCA** | ) | |
| **5100 Biddulph Ave.** | ) | |

1

**Cleveland, OH 44114** )
**And,** )
 )
**Lareesa Rice** )
**Rhodes CCA** )
**5100 Biddulph Ave.** )
**Cleveland, OH 44144** )
**And,** )
 )
**Natalie Santoro** )
**Rhodes CCA** )
**5100 Biddulph Ave.** )
**Cleveland, OH 44144** )
 )
**And,** )
 )
**Nanette Reilly** )
**Rhodes CCA** )
**5100 Biddulph Ave.** )
**Cleveland, OH 44144** )
**And,** )
 )
**Hilda Velez** )
**Rhodes CCA** )
**5100 Biddulph Ave.** )
**Cleveland, OH 44144** )
 )
**And,** )
**Wayne J. Belock, Esq.** )
**1111 Superior Ave.** )
**Cleveland, OH 44115** )
**And,** )
 )
**Joseph J. Jerse, Esq.** )
**1111 Superior Ave.** )
**Cleveland, OH 44115** )
      **Defendants** )

## **COMPLAINT**

## **INTRODUCTION**

1. Plaintiff, Dennis Wondrak, (hereafter Wondrak), by and through his undersigned counsel Robert E. Dintaman and W. Scott Ramsey, brings this action pursuant to the following provisions:

2

a. Title VII of the Civil Rights Act of 1964,42 U.S.C. §. 2000e et seq, being exposed to a hostile and discriminatory work environment.;

b. First Amendment Retaliation 42 U.S.C. § 1983; for addressing systemic problems about staffing and support personnel, resulting in a hostile and discriminatory working environment;

c. Conspiracy to retaliate and interfere with equal protection under laws and civil rights under 42. U.S.C. §1985

d. Redress grievances and actions under 42 U.S.C. § 1981

e. Retaliation and coercion under 42 U.S.C. § 12203 after raising concerns regarding staffing and personnel practices at the Cleveland Municipal School District;

f. Age Discrimination pursuant to 29 U.S.C. §, 621-624;

g. Supplemental Jurisdiction claims under the Ohio Revised Code

1. Breach of Contract;
2. Breach of Good Faith and Fair Dealing;
3. Age Discrimination per O.R.C. 4112.02(N);
4. Hostile Work Environment O.R.C. 41112.02(N)
5. Retaliation O.R.C. 4112.02(I);
6. Protected Activity O.R.C. 4112.02(I);
7. Intentional Infliction of Emotional Distress

2. Plaintiff contends that Defendants and Defendant's Officials, including, but not limited to their agents, employees and/or servants as outlined above, discriminated against Wondrak for disciplining him differently because of his gender; his age and expressing a systemic concern regarding staffing and personnel matters. More specifically, Plaintiff was subjected to a hostile work environment and retaliation for raising concerns about support staff in his classroom, namely paraprofessionals, regarding the employment practices and personnel decisions regarding paraprofessional support staff working with him and an overall systemic problem at the Cleveland Metropolitan School district. This discrimination and retaliation created a hostile work environment for Wondrak, causing him to suffer emotional distress, stress, anxiety; and, financial and economic harm, including a transfer to an inferior employment position, school system and reduction of job duties and pay.

## VENUE

3. Venue is proper in this judicial district under 42 U.S.C. Sec. 2000e-5(f)(1); as Wondrak was employed by Defendant, Cleveland Metropolitan School District, in the County of

3

Cuyahoga, State of Ohio at the time of the discrimination and retaliation; and, actions adverse to the Plaintiff which are the subject matter of this civil action were taken in this judicial district.

## PARTIES

4.  Plaintiff is a 46-year-old Caucasian male and a licensed teacher by the State of Ohio, and at all relevant times during this complaint was a teacher with 3 years of teaching experience. At all times relevant to this matter had the type of pressure, harassment and toxic environment to teach in all during Wondrak's tenure as described herein.

5.  Wondrak took a job with Defendant the Cleveland Metropolitan School District in the 2017-2018 academic school year at Rhodes College and Career Academy as teacher in the Emotional Disturbed unit with the school.

6.  Defendant Cleveland Metropolitan School District, (CMSD), is a City School District, located in the City of Cleveland, organized and existing pursuant to Chapter 3313 of the Ohio Revised Code

7.  Defendant CMSD operated Rhodes College & Career Academy, (RCCA), as a charter school operating under the principles and practices as required CMSD and according to the parameters under O.R.C. 3313.

8.  Defendant Alyssa Starinsky, (Starinsky), is a principal with CMSD and works specifically at RCCA, and who is responsible for the day to day operations of the RCCA. Defendant Starinsky is gender identified as a female, 30 years of age.

9.  Defendant Hilda Velez, (Velez), is a bilingual paraprofessional employed by CMSD and specifically works at RCCA.  Defendant Velez was assigned to the classroom as a paraprofessional in Wondrak's classroom.

10. Defendant Consuela Townsend, (Townsend), is assistant administrator/C.I.S., employed by CMSD and specifically works at RCCA.  Defendant Townsend is gender identified as a female.

11. Defendant Lareesa Rice, (Rice), is employed as an intervention specialist at CMSD and specifically works at RCCA.  Defendant Rice is gender identified as a female.

12. Defendant Michelle Allen, (Allen), is employed as a paraprofessional at CMSD, more specifically working at RCCA.  Defendant Allen was assigned to the classroom as a paraprofessional in Wondrak's classroom. Defendant Allen is gender identified as a female.

4

13. Defendant Nanette Reilly, (Reilly), is employed as a general education teacher at CMSD and more specifically works at RCCA.  Defendant Reilly is gender identified as a female.

14. Defendant Lorenzo Russell, (Russell), is employed as a network leader/administration at CMSD.

15. Defendant Wayne J. Belock, (Belock), and Defendant Joseph J. Jerse, (Jerse), are legal counsel with CMSD.

## STATEMENT OF FACTS

16.  On or about May 23, 2017, Defendants CMSD and RCCA approved and hired Plaintiff to work at RCCA as a teacher in the Emotionally Disturbed Unit, (ED), at RCCA. (See Plaintiff's Contract, attached as Exhibit A)

17.  Plaintiff Wondrak, received a 1 year contract making 47,101.14 per year to run through the 2017-2018 school year.

18. Prior to being hired by Defendant CMSD and RCCA, Wondrak had experience as a teacher, 3 years teaching in Cleveland and Lakewood School districts; and practically serving as Cleveland Police Officer in the City of Cleveland for 9.5 years.  Wondrak's teaching certification and practical experience as a police office made him qualified and well suited to handle the ED unit at Defendant RCCA.

19. Wondrak was placed in his own classroom at RCCA with support staff, namely Defendants Allen and Velez, paraprofessionals with CMSD and RCCA.   Defendant Allen's duties were to provide administrative backup and support to Wondrak in teaching the ED unit.   It is a necessity to have competent, professional and supportive staff, particularly paraprofessionals to make the ED unit teaching environment conducive to learning for the students.

20. From August 14, 2017 until the end of September 2017, Wondrak and Allen worked well together and operated a productive classroom for the ED unit, maintaining a professional and product environment for the students in the ED, conducive to learning.

21. In October 2017, the teaching environment changed, for reasons unknown to Wondrak. Defendant Allen became a disruptive and interfering force in the classroom.   Defendant Allen began to:  regularly show up to the classroom late; failed to attend to student's needs and assist in the lesson plans being given to the students: ignore students when outbursts and fighting occurred in the classroom; and, overall generally interfered with the flow and learning environment of the classroom.

22.  Wondrak made several attempts and overtures with Defendant Allen to resolve the problem within the classroom.  However, as Wondrak made attempts to resolve the matters, Defendant Allen; however, Defendant became dismissive and more combative by engaging continued disruptive behaviors in the classroom, such as being late to class, refusing to use her room key, as she knocked on the door to gain access during instruction, muttering inappropriate comments during lectures, and refusing to respond to verbal request given to her. Defendant Velez provided no support or help to assist or rectify Allen's behaviors, continuing to add to the disruptive and interfering force in the Classroom. Defendant Allen's conduct not only was personally disruptive to Wondrak; but also, Allen's conduct interfered with student learning in the classroom.

23. Left with no choice, after attempting to resolve the matter with Allen individually and having no success working through Defendant Velez to help matters with Allen, Wondrak, filed a complaint regarding Defendant Allen's behavior to Defendant Starinsky, Principal at RCCA, on October 17, 2017.  Wondrak also emailed Defendant Allen his complaint.  Wondrak sent the complaint to administration in an effort to stop Defendant Allen's inappropriate behavior in front of the students, as it was deteriorating the learning environment for the students.    Upon receipt of the complaint, Defendant Starinsky scheduled a meeting with Wondrak, Defendant Allen and Defendant Townsend.

24. During the meeting Defendant Townsend started the conversation between the parties, in front of Defendant Allen and Wondrak, that the parties were there to address problems Wondrak had with Allen.  This was not the case, as it was Wondrak's understanding that it would be a group effort to make the learning environment more conducive for the students and Wondrak and Allen, and not a session to call out and accuse Allen. Wondrak was immediately placed on the defensive, and made to be the problem, in the unit without addressing the real concerned by Wondrak; namely preserving the learning integrity of the ED unit.

25.  Additional meetings between Defendant Starinsky, Defendant Townsend, Defendant Allen and Wondrak regarding similar objectives and goals occurred over the next several weeks; however, the approach of the meeting was the same placing Wondrak on the defensive and in a bad light in the meeting.  During a second meeting, Defendant Allen stated, "she didn't have to work with Mr. Wondrak', to which Defendant Starkinsky asked for clarification as to Defendant Allen's meaning.  The question remained unanswered.  Wondrak wanted to clear the air and get the learning environment back on track. To which, Wondrak stated to Allen that 'He apologized for any misunderstanding and that he wanted what is best for the students, but that he would need for Defendant Allen to talk to him, if something was wrong".  Later, Defendant Starinksy stated that his attempt to settle the issue was inappropriate, as he had made a "clarifying statement", so it made things worse. Wondrak's efforts to correct and rectify the problem were treated indifferently and resulted in disparate treatment as the meetings focused on the concerns and

perspectives of Allen and not the issues raised by Wondrak.  Wondrak was treated differently by Defendant Starinsky, directly and indirectly, as an older, white male, treated as an outsider with no voice; allowing the individuals in the meeting who caused the problem to receive the protection of administrative staff.

26. After the meetings, the teaching environment did not improve in Wondrak's class. Defendant Allen's behavior did not improve, but became worse causing more disruptions, interferences and problems in the classroom.  Defendant Velez, who came to the unit in mid November 2017, operated the same way, exacerbating the problems in the classroom by adopting the same behavior, and offering no assistance to Wondrak.  At one point as a fight and disruptive behavior by students occurred in the classroom which required Wondrak to intervene; the paraprofessionals did nothing.  Rather while the dangerous situation in the classroom occurred the Defendants Velez and Allen did nothing, conducting private conversations amongst themselves ignoring the problem and leaving the fight in the hands of Wondrak by himself.  At one point, Defendant Allen shoves her hand in a student's face as he tried to ask her for assistance.

27. Wondrak continued to notify Defendant Starinsky about the disruptive and problematic behavior of his paraprofessionals, Velez and Allen, but nothing was done.  Instead, Defendants Starinsky and Townsend took another approach by blaming Wondrak for the problems in his classroom and applying pressure toward Wondrak to change his behavior and attitude, as they ignored the real issues raised by Wondrak.  The focus by Defendants Starinsky and Townsend was on Wondrak and not the actual problems caused by Defendants Allen and Velez in the classroom, which empowered Defendants Allen and Velez to continue to disrupt Wondrak's classroom and his ability to teach. Defendants Starinsky and Townsend's enabling attitude toward Allen and Velez started, directly and indirectly, the retaliation against Wondrak.  Both Allen and Velez had access to daily lessons, and assignments, but would often interrupt Wondrak's teaching, asking what the students were working on or other disruptive behaviors; even after Wondrak had just instructed the students on what they would be doing.

28. In addition, more pressure was brought to bear by Defendant Starinsky, at all times under the supervision of Defendant CMSD, RCCA and other agents, employees and servants CMSD, as the Defendants, directly and indirectly, increased retaliating against Wondrak.

29. The retaliation took the form of changing Wondrak's class schedule staring in December 2017, improperly, without proper notice; and, after the October deadline, as outlined by the union contract at CMSD.  Upon Wondrak contacting the union, despite Defendant Starinksy's attempt to stop Wondrak, Defendant Starinksy informed the union representative that the schedule change was a "misunderstanding" and would not happen. However, Wondrak's schedule was changed anyway in January 2018, as he was notified that Defendant Reilly, out of the blue, was uncomfortable with him "pushing in" and that Wondrak was now required to teach Algebra, not previously required.  This is not

permitted per union guidelines.  Defendant Starinsky pushed the change of schedule in duties late in the school year, as she, Starinsky, pitted Wondrak and Defendant Reilly against each other as the reason for the schedule change, even though a change in scheduling and duties is against procedure and without Wondrak having the proper union representation to address the change. The above-mentioned schedule and work duties change was clearly done to retaliate and antagonize Wondrak and created a hostile environment for Wondrak to work.  Also, it was becoming increasingly clear that as older white male raising the concerns addressed above, Wondrak was treated differently and Defendants made things more difficult for him.

30. Wondrak's evaluator, Defendant Townsend, continually challenged and blamed Wondrak for poor performance in the classroom, which has simply not true; and contrary to the reality of Wondrak's educational environment.  Rather, Defendant Townsend, and other agents, servants and/or employees of Defendant CMSD failed to provide proper expectations and teaching objectives; and, generally permitted the undermining of Wondrak's ability to operate his classroom successfully.   Defendant Townsend's evaluations contradicted her own statements and conclusions, so much so that, Wondrak won both appeals of her poor evaluations, but was still put for non-renewal by Defendant Starinsky, based off Townsend's evaluations in May 2018. All of the above listed actsion taken by the Defendants were not merit based; rather, were truly based on Wondrak's decision to challenge the operating structure and environment of RCCA.

31. Defendants collective actions as stated above, caused Wondrak to experience stress, anxiety and illness requiring Wondrak to seek medical and psychological help. Defendants actions and behavior toward Wondrak became so toxic that Wondrak was required to leave the school on multiple occasions to seek the medical help during the school day.

32. Through the above-mentioned medical treatments, Wondrak required time off from school.  Wondrak properly applied for time off due the illnesses described above; however, additional retaliation occurred by Defendant Starinsky by not properly documenting the requires time off by Wondrak and attempting to claim that Wondrak took time off from school without proper medical and administrative approval which was simply not true.

33. Additionally, Defendant Starinksy brought Wondrak up for discipline charges of falsifying time records related to the sick time off from work.  Wondrak later won his appeal on payroll and sick time charges and Wondrak's sick time was ordered to be returned to him without penalty to Wondrak.

34. In January 2018 Defendants continued to pressure and bully Wondrak.   Defendant Starinky told Wondrak that he had not produced a lesson plan or showed the lesson plan to administration. This was not true, as it was available on the school's Google account

8

system since October 2017, with Defendant Starinsky clearly ignoring the lesson publicly available on RCCA's web server.

35. The pattern of creating a hostile work environment and unnecessary pressure continued, as Defendants Townsend and Starinsky began attacking Wondrak's classroom environment. Defendants accused Wondrak of not using the CHAMPS level teaching system, which was not true as Wondrak clearly posted the procedure in his classroom and used daily as required by CMSD.  Wondrak was accused of not having his students log in to the CK12.org computer teaching system. This was not true, as it was used at all times and over breaks as required. Additional minor nitpicks and infractions on other matters were brought up in Wondrak's classroom, also not true. all of the above were representative of Defendants' continued harassment, bullying and created an overall hostile environment, and not real concerns regarding Wondrak.

36.  Defendants above listed complaints of not following school procedure were simply not true, as Wondrak followed procedures.  Defendants clearly were pursuing these actions against Wondrak to disrupt and make him feel uncomfortable in clear retaliation to complaining about the work of paraprofessionals Allen and Velez. Additionally, as an older white male at the school, Wondrak was singled out differently and disparate treatment, as the other Defendants, all gender identified as female, stuck together against Wondrak under the supervision and protection of the CMSD and other agents, servants and/or employees of the Defendant who allowed Defendants Starinsky, Townsend, Velez and Allen's behavior toward Wondrak to perpetuate as described above without intervention or deterrence, and to the detriment of Wondrak's classroom.

37. Additionally, When Wondrak brought up Allen's habitual lateness and disruptive behaviors in the classroom, Wondrak asked Defendant Starinsky if he were to act as Allen, being habitually late and disruptive, that he would be fired.  Defendant Starinsky made it clear that Wondrak would be fired, which Wondrak understood that being a white male, and older, he would have been fired, unlike Defendant Allen who was allowed act as described above.

38. In the interim of all the above listed attacks by the Defendants, Wondrak received the HEART Award for outstanding teaching excellence and customer service.   The Heart Award is determined by fellow peers and parents.  Defendants attempted to deny Wondrak the award unnecessarily and without merit but were unsuccessful.

39. Defendant Townsend started offering negative evaluations of Wondrak's works and TDES evaluations, which were not present or occurred prior to Wondrak's complaints about paraprofessional staff in his classroom.   Wondrak won his appeal of Townsend's classroom evaluations, which over rode Townsend's ratings of ineffective.

40.  Given the above, Wondrak was unable to maintain a conducive teaching environment. Defendants Allen and Velez continued to refuse to assist Wondrak with the classroom,

failed to respond to Wondrak's' request to work in the classroom and continued to do operate on their own in spite of Wondrak.   Defendants Allen and Velez refused to work with the students assigned to them, leaving Wondrak to handle the class on his own.   At one point, the lack of attention to classroom work by Defendants Velez and Allen led to a student performing a sentence writing task that the student wrote the same paragraph over and over again, against specific instructions provided to Velez in a digital copy of a graphic organizer, as Defendant Velez failed to correct or rectify the problem.

41. As Wondrak did not receive consideration or action from his complaints from his immediate administration at RCCA, Wondrak sent emails and made other attempts to communicate his concerns to other higher up administrators in CMSD, including Defendant Lorenzo Russell. Wondrak's complaints were ignored, without action from Defendant Russell or any other superior or supervisor at CMSD, all the while the environment around Wondrak continued to become more hostile, resulting continued stress, anxiety and other medical problems to Wondrak.

42.  Wondrak approached the legal counsel of CMSD Defendant Wayne Belock on January 23, 2018.   In an email, Wondrak outlined the hostile environment he experienced at the hands of Defendants Starinsky, Velez, Allen, Townsend and other agents, employees and/or servants at Defendant RCCA.  Only after making a direct phone call to Wayne Belock's office on February 2, 2018, did Wondrak obtain a meeting with CMSD Deputy Legal Counsel, Defendant, Joseph Jerse on February 14, 2018. (Wondrak's Email 1/23/18, attached as Exhibit B)

43. In the meeting with Defendant Jerse, Wondrak outlined his concerns with Defendants' Velez, Allen, Starinsky and Townsend's conduct toward Wondrak and the hostile work environment the Defendants exposed Wondrak and students after Wondrak attempted to address the problems as outlined above. In the meeting Defendant Jerse told Wondrak that he would have to tell Defendant Starinsky, which meant to Wondrak that his work environment would deteriorate further.

44. After the meeting with Jerse, Defendants Allen, Velez, Starinsky and Townsend did not rectify the behavior or change Wondrak's working environment.  It became worse.  Later, Wondrak would find out that the Defendants drafted, generalized and vague statements claiming that Wondrak was intimidating and a problem at RCCA, miraculously and conveniently dated 2/15/18 after Wondrak met with Defendant Jerse.  Clearly Defendants took this step in retaliation and in response to Wondrak's actions, in an effort to correct and scrub Defendants deplorable behavior to this point.

45. In March 2018, several of Wondrak's students were disciplined, and ultimately suspended.  Wondrak was not in the classroom on the day of the suspensions, and requested paperwork from Defendant Starinsky on the suspensions which is necessary to

allow Wondrak to process paperwork on the suspensions to stay state compliant. Defendant Starinsky, and other Defendants, failed to provide the necessary paperwork, by delaying the delivery to Wondrak, so that Wondrak would not be able to do his job. Without the necessary paperwork Wondrak could be disciplined, including suspension and/or firing.  Defendants' actions were clearly in retaliation for Wondrak's decision to speak up as outlined above.

46.  On May 11, 2018, Wondrak received a notice of non-renewal for teaching at RCCA, based on the complaints and acts of Defendants Starinsky, Velez, Allen and Townsend. The meeting was set May 14, 2018 and was attempted to be conducted without the evidence or statements prepared by Defendants.  It was at the non-renewal meeting with representatives of CMSD that Wondrak received the statements against by Defendant Velez, Reilly, Santoro, Townsend, Allen and Starinsky dated February 15, 2018, which would be the first time Wondrak received these types of complaints while at RCCA, and clearly after Wondrak expressed concern to Defendant Jerse on February 14, 2018.

47. The non-renewal was pulled on May 18, 2018 by CMSD after Wondrak defended himself at the non-renewal meeting ;by asking "What specifically" was Wondrak not being renewed , and, that Defendant CMSD and RCCA failed to afford Wondrak due process as guaranteed to Wondrak under his teaching contract with CMSD as Wondrak only had statements made by other personnel at RCCA but those individuals were not present. Additionally, Wondrak had circulated evidence of Defendants to several administrative personnel at CMSD and RCCA, which contradicted Defendants' statements in support of Wondrak's non-renewal.  Defendants Starinksy and Russell could not articulate what Wondrak was being non-renewed for, and Wondrak's non-renewal was withdrawn. Wondrak was later moved to Max Hayes School in CMSD, as part of a "special transfer", in a lessor position and lessor pay.

48. Defendant's transfer of Wondrak was done in direct response to Wondrak's complaints brought regarding Defendant's Starinsky, Allen, Velez, Townsend and Rice and additional retaliation instituted by Defendants when the non-renewal would not work. During this time, Defendant Starinsky also notified Wondrak that she was bringing him up on disciplinary charges for "threatening and intimidating coworkers", because he was given the statements the defendants had falsely made against him, as part of his due process request, in the defendants attempt to remove Wondrak from his position with CMSD.  On June 1, 2018, after Wondrak was moved to another school, Starinksy notified Wondrak via email, that the discipline hearing for intimidating coworkers was canceled.

## COUNT ONE

**(Title VII of the Civil Rights Act of 1964,42 U.S.C. Sec. 2000e et seq, being exposed to a hostile and discriminatory work environment based on gender and age)**

11

49. The foregoing paragraphs are realleged and incorporated by reference herein.

50. The Defendants' conduct, jointly and severally, as alleged at length herein constitutes discrimination based on gender and age in violation of Title VII.

51. As Wondrak was an older male within the ED unit, Defendants conduct, treatment, disciplinary measures and overall behavior toward Wondrak were based, directly and indirectly, on Wondrak age and gender.

52. The stated reasons for the Defendants' conduct were not true reasons, but instead were pretext to hide the Defendants' retaliatory animus.

## COUNT TWO

**(Retaliation for Engaging in Protected Activities)**

53. The foregoing paragraphs are re-alleged and incorporated by reference herein.

54. The Defendants' conduct as alleged above constitutes retaliation against Plaintiff because he engaged in activities protected by Title VII.   The stated reasons for the Defendants' conduct were not true reasons; but instead were pretext to hide the Defendants' retaliatory animus.

## COUNT THREE

**(Hostile and Abusive Working Environment)**

55. The foregoing paragraphs are re-alleged and incorporated by reference herein.

56. The Defendants' conduct as alleged above constitutes hostile and abusive working environment against Plaintiff in violation of Title VII.  The stated reasons for the Defendants conduct were not the true reasons, but instead were pretext to hide the Defendants' discriminatory animus.

## COUNT FOUR

**(Breach of Contract)**

57. The foregoing paragraphs are re-alleged and incorporated by reference herein.

58. Plaintiff had a contract with CMSD and RCCA, entered into by Plaintiff and Defendants.

59. Defendants' conduct outlined above purposely and deliberately violated the contractual obligations in the contract; and Defendants' conduct recklessly interfered with Wondrak's contrfact.

60. Defendants' conduct constituted and resulted in material breach of the terms of the contract.

61. The material breach of the contact resulted in damages to Plaintiff, including be sent to a new school system, loss of pay and permanent negative marks on his employment with CMSD.

## COUNT FIVE

### (Breach of Good Faith and Fair Dealing)

62. The foregoing paragraphs are re-alleged and incorporated by reference herein.

63. Defendants' conduct and actions outlined above undermined good faith and fair dealing as implied in Plaintiff's contract with Defendants.

64. Defendants' conduct and actions as outlined above interfered and thwarted the purpose of the contract.

65. Plaintiff was damaged due to Defendants' lack of good faith and fair dealing.

## COUNT SIX

### (Hostile Work Environment)

66. The foregoing paragraphs are re-alleged and incorporated by reference herein.

67. Wondrak is a 45 year old male teacher at CMSD.  Under Ohio law he is a member of a protected class as outlined in R.C. 4112.2(N).

68. As outlined above, Wondrak's age, Wondrak was treated differently which the harassment had the effect of unreasonably interfering with Wondrak's work performance and creating an objectively intimidating, hostile, or offensive work environment and unreasonably interfered with Wondrak doing his job at RCCA.

69. The Defendants' conduct as alleged above constitutes hostile and abusive working environment against Plaintiff in violation of R.C. 4112.02(N).  The stated reasons for the

13

Defendants conduct were not the true reasons, but instead were pretext to hide the Defendants' discriminatory animus.

## COUNT SEVEN

### (Retaliation)

70. The foregoing paragraphs are re-alleged and incorporated by reference herein.

71. Wondrak engaged in protected activity by telling Defendants about the problematic and corrosive work environment at RCCA;

72. Defendants were aware that Wondrak was engaged in protected activity by acting as outlined above

73. Defendants took an adverse employment action, as clearly outlined above, against Wondrak;

74. As outlined above, Defendants conduct is clearly connected Wondrak's activities as outlined above, and the adverse actions by Defendants.

75. The Defendants' conduct as alleged above constitutes retaliation against Plaintiff because he engaged in activities protected by R.C. 4112.02(I).   The stated reasons for the Defendants' conduct were not true reasons; but instead were pretext to hide the Defendants' retaliatory animus.

## COUNT EIGHT

### (Protected Activity)

76. The foregoing paragraphs are re-alleged and incorporated by reference herein.

77. The Defendants' conduct as alleged above constitutes retaliation against Plaintiff because he engaged in activities protected by R.C. 4112.02(I).   The stated reasons for the Defendants' conduct were not true reasons; but instead were pretext to hide the Defendants' retaliatory animus.

## COUNT NINE

### (Intentional Infliction of Emotional Distress)

78. The foregoing paragraphs are re-alleged and incorporated by reference herein.

79.  Defendants' conduct outlined above was intended to cause Plaintiff severe emotional distress and did cause Plaintiff severe emotional distress.

80.  Defendants' conduct was extreme and outrageous.

81. Defendants' conduct was the proximate cause of Plaintiff's serious emotional injury.

<u>**COUNT TEN**</u>
**(conspiracy to retaliate and deprive protected rights and equal protection under the laws pursuant to 42 U.S.C. §1985)**

82.  The foregoing paragraphs are re-alleged and incorporated by reference herein

83. The Defendants' conduct as alleged above constitutes retaliation and conspiracy to violated civil rights and guaranteed equal protection under the law against Plaintiff because he engaged in activities protected by 42 U.S.C.. § 1985.   The stated reasons for the Defendants' conduct were not true reasons; but instead were pretext to hide the Defendants' retaliatory animus.

<u>**COUNT ELEVEN**</u>
**(engaged in activities protected under 42 U.S.C.  §  1981)**

84.  The foregoing paragraphs are re-alleged and incorporated by reference herein.

85. The Defendants' conduct as alleged above constitutes retaliation against Plaintiff because he engaged in activities protected by 42 U.S.C. §1981.   The stated reasons for the Defendants' conduct were not true reasons; but instead were pretext to hide the Defendants' retaliatory animus.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff respectfully pray this court:

(A) Plaintiff demands declaratory and injunctive relief that Defendants acts, polices, practices and procedures complained herein-violated Plaintiff's rights as secured by the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. §1981, 1983, 1985; Title VII of CRA; Age Discrimination; reciprocal and ancillary rights under Ohio as outlined, including Breach of Contract, Emotional Distress Laws; and, to make whole Plaintiff who has been adversely affected by the policies and practices described herein in an amount to be shown at trial and other affirmative relief;

(B)  Compensate the Plaintiff for loss of pay, benefits and path of career;

(C) Compensatory and punitive damages;

(D) To award reasonable attorney's fees and costs of this action;
(E) Grant such additional relief as the court deems just and proper;

Plaintiff demands judgment against the Defendants, jointly and severally, in the amount of **TWO MILLION DOLLARS ($2,000,000.00)**.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully Submitted,

/s/Robert E. Dintaman
Robert E. Dintaman #0069555
Robert E. Dintaman, Esq., LLC
2000 Lee Road, Suite 114
Cleveland Heights, OH 44118
Ph: (216) 287-5583
Fax: (440) 348-2347
Email: redjresq2004@yahoo.com

W. Scot Ramsey #0070820
Attorney at Law
55 Public Sq., Suite 2100
Cleveland, OH 44113
Ph: (216) 696-5520
Email: wsresq@aol.com