**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DENNIS WONDRAK,** | ) | **CASE NO.: 1:18CV01977** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | |
| | ) | |
| **CLEVELAND METROPOLITAN** | ) | **OPINION AND ORDER** |
| **SCHOOL DISTRICT, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter comes before the Court upon the Motion to Dismiss of Defendants, Cleveland Metropolitan School District, Rhodes College and Career Academy, Consuela Townsend, Lorenzo Russell, Alyssa Starinsky, Michelle Allen, Lareesa Rice, Natalie Santoro, Nanette Reilly, Hilda Velez, Wayne J. Belock and Joseph J. Jerse. (Doc. 14.) For the following reasons, the Motion is granted, in part, and denied in part.

**A.    Background**

    *i.    Factual History*

Plaintiff, a 46-year-old white male, was hired by the Cleveland Metropolitan School District

("CMSD") as a teacher in the "Emotional Disturbed" unit at Rhodes College and Career Academy ("RCCA") during the 2017-2018 academic year. (Am. Compl. ¶¶6-7.) Plaintiff worked in his own classroom with support staff paraprofessional Michelle Allen. (Id. ¶¶14, 22.) Hilda Velez, a bilingual paraprofessional, worked in Plaintiff's classroom beginning in November 2017. (Id. ¶¶11, 22.) Paraprofessionals were responsible for providing administrative backup and support to Plaintiff. (Id. ¶22.)

Plaintiff and Allen maintained a professional and productive classroom in August and September 2017. (*Id.* ¶29.) According to Plaintiff, in October 2017 Allen became disruptive and interfered with the classroom by arriving late, failing to attend to students' needs and failing to assist in lesson plans. (*Id.* ¶30.) Allen continued to exhibit disruptive behavior despite several attempts by Plaintiff to resolve the issues in the classroom. (*Id.* ¶33.)

On October 6, 2017 Plaintiff filed a complaint regarding Allen's disruptive behavior with RCCA Principal Alyssa Starinsky. (*Id.* ¶ 36.) A number of meetings took place in an attempt to resolve Plaintiff's concerns over Allen's disruptive behavior. (*Id.*, Ex. B.) According to Plaintiff, the structure of these meetings placed him "on the defensive and... in a bad light." (*Id.* ¶38.) In a private discussion after one of these meetings, Plaintiff was told by Starinsky that his complaints would be taken seriously if he "'was situated as Defendant Allen', i.e. a female African American." (*Id.* ¶39.) According to Plaintiff, in an effort to retaliate against him, Starinsky attempted to change Plaintiff's schedule in December of 2017. (*Id.* ¶46.) Starinsky canceled the schedule change after Plaintiff contacted the Union to protest it. (*Id.* ¶47.) The next month, Plaintiff's schedule was again changed when a teacher at RCCA reported that she was "uncomfortable" with Plaintiff continuing to assist in her classroom. (*Id.* ¶¶47-48.)

Plaintiff alleges that Consuela Townsend, Plaintiff's evaluator, submitted performance reviews that contained falsities and contradictions in an effort to harass and retaliate against Plaintiff. (*Id*. ¶¶50-53.)  Plaintiff also alleges that Townsend falsely reported Plaintiff for disciplinary charges regarding falsifying time records.  (*Id*. ¶56.)  Plaintiff later won on appeal regarding the time records. (*Id*.)  In the same time period, Plaintiff received the HEART award for teaching excellence and customer service.  (*Id*. ¶61.)

Plaintiff filed a complaint of hostile environment with CMSD's Legal Department in January 2018.  (*Id*. ¶65.)  Plaintiff met with Joseph Jerse, an attorney in the Legal Department, to discuss Plaintiff's complaints on February 14, 2018.  The following day, several of Plaintiff's colleagues at RCCA filed witness statements complaining about Plaintiff.  (*Id*. ¶67; Ex. B.)

On May 11, 2018, Plaintiff received a non-renewal notice based on complaints made by RCCA staff.  (*Id*. ¶68.)  Plaintiff's non-renewal hearing was held on May 14, 2018.  (*Id*.)  Following the hearing CMSD decided to renew Plaintiff's contract but to transfer him to a different school.  (*Id*. ¶69-70.)

  ii. *Procedural History*

Plaintiff filed a charge of discrimination based on sex and retaliation with the Equal Employment Opportunity Commission ("EEOC") on May 25, 2018.  On May 30, 2018, the Commission issued a Dismissal and Notice of Rights stating:  "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes... No finding is made as to any other issues that might be construed as having been raised by this charge."

On August 28, 2018, Plaintiff commenced this civil action against Defendants, alleging claims of retaliation and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e, et seq. ("Title VII"), as well as supplemental Ohio state law contract and tort claims. (Compl., Doc. 1.) On April 10, 2019, Plaintiff filed his first Amended Complaint. (Doc. 13.) On April 24, 2019 Defendants filed their Motion to Dismiss all eight Counts of the Complaint. (Doc. 14.) On May 7, 2019 Plaintiff filed a Brief in Opposition to Defendants Motion to Dismiss. (Doc. 15.) On May 21, 2019 Defendants filed their Reply in Support of their Motion to Dismiss.

**B.     Defendants' Motion to Dismiss**

   *i.     12(b)1- Lack of Subject-Matter Jurisdiction*

Standard of Review:  When a Defendant challenges standing on a motion to dismiss, it is plaintiff's burden to prove the existence of subject matter jurisdiction. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986). Such challenges are brought by two different methods:  (1) facial attacks and (2) factual attacks. See, e.g., *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

"A facial attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Walters v. Leavitt*, 376 F. Supp.2d 746, 752 (E.D. Mich. 2005) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). "A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations... and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Walters*, 376 F. Supp.2d at 752.

According to Defendants, the Court lacks subject matter jurisdiction over Counts Four (Breach of Contract) and Five (Breach of Good Faith and Fair Dealing) because Plaintiff is bound by

the Collective Bargaining Agreement ("CBA"). The CBA requires parties to resolve disputes through the CBA's grievance procedures, namely, binding arbitration. Defendants also argue that Plaintiff's allegations involving unfair representation would be under the exclusive jurisdiction of the State Employment Relations Board ("SERB"). (Doc. 14 at 7.) Plaintiff concedes that "a CBA serves as the ground rules and resolution procedure, at least initially." (Doc. 15 at 10.) Plaintiff's position is that under certain circumstances a party is entitled to remedies outside of a CBA. Interestingly, Plaintiff recognizes that "a party can seek redress of CBA claims in court after exhausting administrative remedies," yet fails to ever mention SERB in the Brief in Opposition to Defendant's Motion. (Doc. 15 at 11.)

Counts Four and Five of Plaintiff's Amended Complaint only allude to claims involving Plaintiff's lack of adequate representation. Under Ohio law, it is an unfair labor practice to "fail to fairly represent all public employees in a bargaining unit." R.C. 4117.11(B)(6). Additionally, the Sixth Circuit has held "acts which constitute unfair labor practices under [R.C.] 4117 are subject to the exclusive jurisdiction of the State Employment Relations Board ("SERB"), the courts cannot review such claims on primary jurisdiction." *Zafirau v. Cleveland Mun. Sch. Dist.*, 448 F. App'x 531, 536 (6th Cir. 2011). Furthermore, "[a]n appellant may only seek relief from the courts after he or she has exhausted the administrative remedy provided through SERB." *Id.* (citing *Shamrock v. Trumbull Cnty. Comm'rs*, 71 Ohio App. 3d 54, 57, 593 N.E.2d 28, 31 (1990)).

Here, Plaintiff states "a party can seek redress of CBA claims in court after exhausting administrative remedies," but Plaintiff has failed to exhaust his administrative remedies for both Counts Four and Five. Article 6 of the CBA provides an extensive framework for problem resolution and grievance procedures. (Doc. 14-2 at 15-19.) Plaintiff alleges his grievances were not fully

addressed under the CBA because he lacked fair representation. (Doc. 15 at 13.) The CBA explicitly states: "Nothing shall preclude the Union or an individual from the right to file an Unfair Labor Practice in accordance with O.R.C. 4117." (Doc. 14-2 at 15.) Plaintiff failed to pursue a remedy through SERB for his alleged unfair representation as required under R.C. 4117 and Ohio case law. Therefore, Counts Four and Five are dismissed for lack of jurisdiction.

      ii.        *12(b)6- Failure to State a Claim Upon Which Relief Can Be Granted*

Standard of Review: "In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). The United States Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard: "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusion, are not entitled to the assumption of truth."

While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-plead factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 664. When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any

exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein. See *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

        a.        *Administrative Exhaustion- Counts One and Three*

In order to recover for illegal discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., a plaintiff must first file a charge with the EEOC. *Amini*, 259 F.3d at 498. "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in [the plaintiff's] EEOC charge. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). The exhaustion requirement limits judicial review "to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991) (internal quotation omitted). When an EEOC charge is filed by an individual without counsel a "broader reading of the charge...is compelled." *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 832 (6th Cir. 1999).

According to Defendants, Plaintiff's claims for hostile work environment based on gender and race as well as his state law hostile work environment claim must be dismissed for failure to exhaust administrative remedies. First, Defendants argue that the race-based discrimination aspects of Counts One and Three are outside the scope of the EEOC complaint and do not reasonably relate to it. (Doc. 14-1 at 10.) The basis for this argument is that Plaintiff's EEOC Charge Document only checks the boxes indicating discrimination based on sex and retaliation. (Doc. 14-3 at 1.) Plaintiff contends, accompanied with an affidavit by a non-party, that Plaintiff reported material details to the EEOC intake officer, including claims of race, age and gender discrimination, which the EEOC employee

left out of the EEOC charge document. (Doc. 15 at 15-16.)

Here, the EEOC charge does not give any indication of discrimination based on race. The race box is not checked nor is there any mention of race in the written narrative. Therefore, Counts One and Three are dismissed to the extent they allege discrimination based on race.

Next, Defendants argue that Plaintiff has failed to exhaust administrative remedies with respect to his claims for hostile work environment (Counts One and Three). (Doc. 14-1 at 12.) Defendant's rely heavily on *Jones v. City of Franklin*, 309 F. App'x 938 (6th Cir. 2009), where Plaintiffs' EEOC complaints focused on discrete acts of discrimination as opposed to a hostile work environment. For example, the plaintiff in *Jones* alleged discrimination in reference to two specific instances: First, failure to receive a promotion and second, a manager giving false information to a newspaper. EEOC Complaint, *Jones v. City of Franklin*, No. 3:08-cv-01134 (M.D. Tenn. Nov 25, 2008), Doc. 29-1. Defendants also point to a similiar situation in *Brown v. City of Cleveland* where the Plaintiff's EEOC charge was limited to two specific instances failure to promote and denial of a disabled parking space. *Brown v. City of Cleveland* , 294 F. App'x 226, 234 (6th Cir. 2008). Lastly, Defendants point to *Scott v. Eastman Chem. Co.*, in which the plaintiff alleged a hostile environment from 1976 to 2005, but the court found that the events described in the EEOC complaint were beyond the statute of limitations. *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 475 (6th Cir. 2008).

Plaintiff admits "there is no direct reference to alleged racial discrimination and hostile work environment claims contained in the Plaintiff's [EEOC] charge". (Doc. 15 at 15). The EEOC charge document is devoid of any specific ongoing behaviors, but recites: "I complained and had several meetings with my supervisor...in regards to the behavior of my female coworker" and "I complained to [the school's legal department] in regards to the behavior of my coworker and the difference in

-8-

treatment because of my gender from my supervisor after I complained." (Doc. 14-3 at 2.) Unlike the cases presented by Defendants, Plaintiff in this case recited in his EEOC complaint both discrete acts of discrimination (changed work schedule, discipline actions and contract non-renewal), as well as a numerous complaints about a coworker's behavior. These complaints were not only to his direct supervisor but Plaintiff also escalated these complaints to CMSD's Legal Counsel. For these hostile work environment claims to be considered in the scope of the charge, the plaintiff must allege facts which would prompt the EEOC to investigate uncharged claims. *Young v. Daimler Chrysler Corp.*, 52 F. App'x. 637, 640 (6th Cir. 2002). The EEOC complaint provides enough detail to prompt the EEOC to investigate the plausibility of a hostile environment claim. Accordingly, Defendant's Motion to Dismiss Counts One and Three for failure to exhaust administrative remedies in relation to a hostile work environment is denied.

### b. *Failure to State a Claim of Hostile Work Environment*

Defendants argue that Plaintiff has not asserted sufficient facts to state a claim of hostile work environment under either Title VII or Ohio law. (Doc. 14-1 at 13.) Specifically, Defendants argue that Plaintiff "alleges no facts connecting Defendants' alleged harassment of Plaintiff to his race or sex." (Doc. 14-1 at 13.) Defendants also list the elements necessary to establish a hostile work environment claim and provide an illustrative example of an individual who was unable to satisfy the elements despite being physically attacked multiple times by coworkers. Plaintiff argues that the comments and actions against him created a toxic environment sufficient to state a claim of hostile work environment. (Doc. 15 at 17.) At this stage in the litigation the standard is that the Complaint must state a plausible claim for relief. Plaintiff's claims may go forward even if "actual proof of [the] facts is improbable" or "a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. The

Court finds that there are enough facts "to raise a reasonable expectation that discovery will reveal evidence" of the necessary elements of Plaintiff's claims. *Id*.

Defendants also argue an alternative basis to dismiss Counts One, Three and Six indicating Plaintiff has failed to state a claim because he has not identified (1) any adverse employment action or (2) a similarly situated employee who was treated more favorably. Defendants argue, unpersuasively, that Plaintiff's claim of being transferred to a lesser position with lesser pay need not be taken as true. (Doc 14-1 at 15). Defendants do not claim that a lesser position with lesser pay would fail to indicate an adverse employment action, merely that Plaintiff is required to provide evidence to support these allegations. (*Id*.) The *Morgan* case which Defendants cite makes it clear that when reviewing a 12(b)(6) motion, "[t]he complaint must be construed in the light most favorable to plaintiff, and its well-pleaded facts must be accepted as true." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Here, Plaintiff's allegation that he was transferred to a lesser position with lesser pay is well-pleaded and not an "unwarranted factual inference". *Id*.

To establish a prima facie case of discrimination, Plaintiff must show that he "was treated differently from similarly situated members of the unprotected class." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007). Defendant cites *Mitchell*, expressing that a plaintiff must show that he and his comparators were similarly situated in "all respects." *Mitchell v. Toledo Hosp*., 964 F.2d 577, 583 (6th Cir. 1992). The Sixth Circuit "explained in *Mitchell* that when the plaintiff lacks direct evidence of discrimination, "the plaintiff must show that the 'comparables' are similarly-situated in all respects," absent other circumstantial or statistical evidence supporting an inference of discrimination." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (citing *Mitchell v. Toledo Hosp*., 964 F.2d 577). Here, Plaintiff alleges several instances

indicating discrimination, including his supervisor making it clear he was being treated differently. (Am. Compl. ¶¶39,41.)

Furthermore, since the decision in *Mitchell,* the Sixth Circuit has repeatedly clarified its position, stating, "[c]ourts should not define "similarly situated" in such a narrow and restricted fashion that it makes it "virtually impossible for [a] plaintiff to make a prima facie showing." *Eichbauer v. Henry Ford Health Sys.*, No. 16-cv-11404, 2017 U.S. Dist. LEXIS 95204, at *6 (E.D. Mich. June 21, 2017) (citing *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008)). In this case, Plaintiff should be given the opportunity in discovery to establish a prima facie case of discrimination and to articulate a comparable employee similar in "all of the relevant aspects." *Ercegovich* at 352.

        c.      *Failure to State a Claim of Retaliation- Counts Two, Seven and Eight*

The Parties agree that to establish a prima facie case for retaliation a plaintiff must establish: (1) he engaged in protected activity known by the employer; (2) he suffered adverse employment actions; and (3) there was a causal connection between the protected activity and the adverse employment action. *Greer-Burger v. Temesi*, 879 N.E.2d 174, 180 (Ohio 2007). "Protected activity" is defined in part as asserting a claim of discrimination, such as a violation of Title VII, the ADEA, the ADA, or R.C. 4112.02. See *Metzenbaum v. John Carroll Univ.*, 987 F. Supp. 610, 617 (N.D. Ohio 1997). The parties disagree as to whether Plaintiff engaged in a protected activity during the time the Complaint covers. (Doc. 14 at 18; Doc. 15 at 20).

Prior to the EEOC Complaint, there is no indication in the record that Plaintiff asserted a claim of discrimination. Plaintiff's Amended Complaint and his documentation related to filing

complaints with CMSD give no indication that any of his internal complaints related to a protected characteristic. The Sixth Circuit has held:

> a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice. An employee may not invoke the protections of the Act by making a vague charge of discrimination. Otherwise, every adverse employment decision by an employer would be subject to challenge under either state or federal civil rights legislation simply by an employee inserting a charge of discrimination.

*Fox v. Eagle Distrib. Co.,* 510 F.3d 587, 591-92 (6th Cir. 2007) (quotation omitted).

The first indication of a discrimination claim in the record is the EEOC complaint filed on May 25, 2018. The right to sue letter was mailed on May 30, 2018 and received by CMSD on June 4, 2019. (Doc. 14-3.) Plaintiff's Amended Complaint does not allege any retaliation after June 4, 2019, which is the first time CMSD would have been aware Plaintiff was engaging in a protected activity. Also, Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss provides no argument to the contrary. Plaintiff's Brief merely states, "[t]he more [Plaintiff] pushed back against the treatment he experienced, the more hostile the environment became." (Doc. 15 at 21.) In no way does this advance Plaintiff's claims of retaliation. For the above reasons, Counts Two, Seven and Eight are dismissed.

### d. Claims Against Individual Defendants

Defendants next argue that Title VII does not impose liability for discrimination on Defendants in their individual capacities. (Doc. 14 at 19.) Defendants cite to a controlling Sixth Circuit case finding that "Congress did not intend to provide for individual employee/supervisor liability under Title VII." *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). Plaintiff does not provide any argument backed by precedent to allow individual liability for Title VII claims, instead arguing that under Ohio Law, in certain circumstances, individuals may be held liable. Accordingly, Plaintiff's remaining Title VII claims against the Individual Defendants are dismissed.

Defendants then argue that Plaintiff has failed to state a claim for discrimination under R.C. 4112 against the Individual Defendants. The overarching issue is how Ohio courts have interpreted the definition of "employer" found in Ohio R.C. 4112.02. Specifically, whether that definition includes individual managers or supervisors and therefore authorizes plaintiffs to bring state discrimination lawsuits against them in their individual capacities.

The opposing parties cite the two Ohio Supreme Court cases that shed light on this issue: *Genaro v. Cent. Transport, Inc.*, 84 Ohio St.3d 293, 1999- Ohio 353, 703 N.E.2d 782 (1999) and *Hauser v. City of Dayton Police Dep't*, 140 Ohio St. 3d 268, 2014-Ohio-3636, 17 N.E.3d 554 (2014). In *Genaro*, the Ohio Supreme Court held that, for purposes of R.C. 4112, a supervisor or manager may be held jointly and/or severally liable with an employer for discriminatory conduct. *Genaro*, 84 Ohio St.3d at 300. In *Hauser*, the Ohio Supreme Court held that R.C. 4112 does not "expressly impose" civil liability on political subdivision employees so as to trigger the immunity exception in R.C. 2744.03(A)(6). *Hauser*, 140 Ohio St.3d at 273. Thus, employees of political subdivisions, according to the Ohio Supreme Court in *Hauser*, cannot be held individually liable for discrimination because they are immune under R.C. 2744.03.

The *Hauser* majority distinguished *Genaro* by stating that *Genaro* "involved private-sector supervisors and managers and it asked only whether such persons may be jointly and severally liable with an employer for conduct 'in violation of R.C. Chapter 4112.'" *Id*. The immunity provision applies because CMSD is considered a "political subdivision" as that term is defined in R.C. 2744.01(F). Accordingly, Counts Six and Seven are dismissed as to the individual Defendants.

**C.      Conclusion**

For these reasons, the Court grants in part and denies in part Defendants' Motion to Dismiss

(Doc. 14) Plaintiff's Amended Complaint. Counts Four and Five are dismissed in their entirety for lack of subject matter jurisdiction. Counts Two, Seven and Eight are dismissed in their entirety for failure to state a claim. Counts One and Three are dismissed to the extent they assert race discrimination under Title VII. Counts One, Three and Six are dismissed as to the individual Defendants. Defendants' Motion to dismiss Counts One and Three with respect to Plaintiff's claims for hostile work environment are denied. Defendants' Motion to dismiss Counts One, Three and Six for failure to state a claim are denied.

       IT IS SO ORDERED.


                                          /s/ Christopher A. Boyko
                                          CHRISTOPHER A. BOYKO
                                          United States District Judge


Dated: December 6, 2019