UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DENNIS WONDRAK,** | ) | CASE NO. 1:18CV1977 |
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | <u>OPINION AND ORDER</u> |
| **CLEVELAND METROPOLITAN** | ) | |
| **SCHOOL DISTRICT,** | ) | |
| Defendant. | ) | |

<u>**CHRISTOPHER A. BOYKO, SR. J**</u>.:

This matter comes before the Court upon the Motion (ECF DKT #30) of Defendant Cleveland Metropolitan School District for Summary Judgment. For the following reasons, the Motion is granted.

**I. FACTUAL BACKGROUND**

Plaintiff was hired by the Cleveland Metropolitan School District ("CMSD") as a teacher in the "Emotional Disturbed" unit at Rhodes College and Career Academy ("RCCA") during the 2017-2018 academic year. His earlier work experience included ten years as a City of Cleveland Police Officer. At RCCA, Plaintiff worked in his own classroom with support staff paraprofessional Michelle Allen. Hilda Velez, a bilingual paraprofessional, also

worked in Plaintiff's classroom beginning in November 2017. These paraprofessionals were responsible for providing administrative backup and teaching support to Plaintiff.

Plaintiff and Allen maintained a professional and productive classroom in August and September 2017. In one of their first conversations though, Plaintiff was troubled when Allen confided that she had a horrible experience in the year prior while working with a "racist white male."

Beginning in October of 2017, Plaintiff relates that Allen became disruptive and interfered with the classroom proceedings by arriving late, failing to attend to students' needs, failing to assist in lesson plans and ignoring student outbursts and fighting. Allen muttered offensive and inappropriate comments during lectures and refused to respond to Plaintiff's requests. Allen continued to exhibit such disruptive behavior despite several attempts by Plaintiff to resolve the issues. Velez compounded the situation by siding with Allen against Plaintiff and referring to Plaintiff as "blancoboy" in front of the students, drawing laughs and jeers from the class. Allen, Velez and others referred to Plaintiff as a "white male cop type person who was intimidating." (Plaintiff's Affidavit, ECF DKT #40-1).

On October 6, 2017, Plaintiff lodged a complaint regarding Allen's behavior with RCCA Principal Alyssa Starinsky. A number of meetings were held in an effort to resolve Plaintiff's concerns over Allen's conduct in his classroom. However, Plaintiff felt dissatisfied and defensive because he believed that Starinsky blamed him. Plaintiff alleges that after one of these meetings, Starinsky privately said that his complaints would be taken seriously if he "was situated as Defendant Allen;" that is, according to Plaintiff, if he were an African American female.

Starinsky attempted to change Plaintiff's schedule in December of 2017. Starinsky canceled the schedule change after Plaintiff contacted the Union to protest it. The following month, however, Plaintiff's schedule was changed when another teacher at RCCA reported that she was "uncomfortable" with Plaintiff continuing to assist in her classroom. The change required Plaintiff to teach another unit of instruction in Algebra.

Plaintiff asserts that Consuela Townsend, an assistant administrator at RCCA, evaluated him and submitted performance reviews containing falsehoods and contradictions in an attempt to harass and retaliate against him. Townsend challenged his lesson plans and his classroom procedures. Plaintiff felt he was made to appear incompetent and ineffective.

In addition, Starinsky critiqued Plaintiff for disciplining students by removing them from the classroom when other options were available; thus, depriving them of educational services. Starinsky offered coaching sessions in order to provide suggestions for running a classroom for children with emotional needs, while addressing the problems Plaintiff confronted.

Plaintiff further contends that Townsend wrongfully reported him for disciplinary charges regarding falsifying time records. Plaintiff suffered stress and emotional distress because of his working environment and he sought medical and psychological intervention. Plaintiff demonstrated that he properly requested medical leave and subsequently won an appeal regarding the time records.

During the same time period, and despite Defendant's actions against him, Plaintiff received the HEART award for teaching excellence and customer service.

Plaintiff brought a written complaint to CMSD's Legal Department in January of 2018, and described the harassment and hostile work environment he endured. (ECF DKT #13-1):

– "The ED unit is a very stressful environment."

– Following a meeting with Administrator Townsend, Allen's "passive aggressive and disruptive behavior" continued. *Id*.

– "Ms. Allen refused to work in the unit, as she would sit in the corner, while she was online, or her phone, and [Plaintiff] was left to support all of the ED students needs. On top of that, she would leave out of class, knock on the door instead of using her key, make comments during [Plaintiff's] lessons, and she continued to use an inappropriate tone, if she did answer [Plaintiff's] questions in front of the students." *Id*.

– "[Plaintiff] is being punished because [he] want[s] the best environment for [his] students, and having a paraprofessional, who undermines [his] lessons and disrupts [his] class is counter intuitive to that." *Id.*

– Regarding poor evaluations by Townsend: "The bottom line is, [he] was being marked down, because of [his] complaints about Ms. Allen, and [he is] being punished for raising the issue and wanting the best for [his] students, and for wanting to work in an environment that helps [him] become the best teacher [he] can be, and not a disruptive hostile working and teaching environment." *Id.*

Plaintiff met personally with CMSD legal counsel Joseph Jerse, who said he would speak with Starinsky. Nonetheless, Plaintiff's situation did not improve.

On May 11, 2018, Plaintiff received a non-renewal notice based on complaints made

against him by RCCA staff.  The recommendation for non-renewal arose out of administrators' observations and witness statements, such as:  (1) Plaintiff failed to control his classroom.  (2) Students were observed sleeping, playing on their cell phones and staring at blank computer screens.  (ECF DKT #30-3 at 45).  (3) Plaintiff violated procedures by sending students with disabilities out into the hallway.  (ECF DKT #30-3 at 34).  (4) Plaintiff threatened students.  (ECF DKT #30-3 at 29).  (5) Plaintiff confronted and argued with co-workers.  (ECF DKT #30-3 at 28).

A hearing was conducted on May 14, 2018; but the non-renewal of Plaintiff's teaching contract was ultimately withdrawn.

Plaintiff requested a transfer out of RCCA.  (Plaintiff's email, ECF DKT #30-3 at 121).  Plaintiff did not want to be somewhere that he was not wanted.  (Plaintiff's Deposition, ECF DKT #30-2 at 50).  A special transfer was granted and Plaintiff was assigned to Max Hayes School, a facility within the CMSD.  (ECF DKT #30-2 at 52).  There, Plaintiff worked as an Inclusion Intervention Specialist.  In that role, he worked with another teacher and was not responsible for his own classroom.  The position paid less money because Max Hayes operated on a standard school year and not on an extended one like at RCCA.

Plaintiff instituted this lawsuit on August 28, 2018, and amended his Complaint on April 10, 2019.  Plaintiff alleged that the Cleveland Metropolitan School District, its employees and administrators targeted him for disparate treatment because he was a white male who people perceived as intimidating.  He alleged that he was mistreated because of his race and gender through comments directed at him, unfounded and critical disciplinary reviews and procedures and attempts to terminate him.  (Plaintiff's Affidavit, ECF DKT #40-

1 at ¶ 7).

Upon consideration of Defendants' Motion to Dismiss on December 6, 2019, Plaintiff's Breach of Contract, Race Discrimination and Retaliation claims were dismissed, along with the state and federal discrimination claims asserted against all individual Defendants. The remaining claims before the Court are Title VII Hostile Work Environment based on Gender and Gender Discrimination (Count One); Title VII Hostile Work Environment based on Gender (Count Three); and Hostile Work Environment based on Gender under Ohio law (Count Six) against Defendant CMSD only.

The matter is now before the Court upon the fully-briefed Motion of Defendant for Summary Judgment.

## II. LAW AND ANALYSIS

**Fed.R.Civ.P. 56 Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed.R.Civ.P. 56(c)(1)(A), (B). A court

considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Title VII Discrimination**

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

In order to establish a prima facie case of sex discrimination under Title VII, a plaintiff must show (1) that he is a member of a protected class, (2) that he was subject to an adverse employment action or decision, (3) that he was qualified for the position, and (4) that he was treated differently than a similarly situated individual outside the protected class. *Vickers v. Fairfield Medical Center*, 453 F.3d 757, 762 (6th Cir. 2006) citing *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004).

In order to bring a hostile work environment sexual harassment claim, a plaintiff must show the following: (1) the employee was a member of a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) employer liability exists. *Wyatt v. Nissan North America, Inc.*, 999 F.3d 400, 411 (6th Cir. 2021); *Vickers*, 453 F.3d at 762; *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005).

**R.C. § 4112.02(A) Discrimination**

"[A] plaintiff may establish a violation of R.C. 4112.02(A)'s prohibition of discrimination "because of * * * sex" by proving either of two types of sexual harassment: (1) "quid pro quo" harassment, i.e., harassment that is directly linked to the grant or denial of a tangible economic benefit, or (2) "hostile environment" harassment, *i.e.*, harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment." *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St. 3d 169, 176-77 (2000).

"In order to establish a claim of hostile-environment sexual harassment, the plaintiff

must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." *Hampel, id.*

In the instant matter, Plaintiff acknowledges that his "remaining claims are under federal and state law for hostile work environment under Title VII and Ohio law." [sic] (Opposition Brief, ECF DKT #39 at 10).

Under both the federal and state rubrics, Plaintiff must be able to show that the harassment occurred because of his sex. *Vickers*, 453 F.3d at 765 ("Rather, "[t]he critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."); *Hampel*, 89 Ohio St. 3d at 181 ("R.C. 4112.02(A) does not reach disparate treatment on account of personal animosity; no matter how severe or pervasive the conduct, harassment does not constitute a discriminatory practice under R.C. 4112.02(A) unless based on a prohibited classification.").

Viewing the evidence in the light most favorable to Plaintiff, he complains about the stressful environment of the ED unit. He claims that he was harassed by Allen and Velez, the paraprofessionals assigned to his classroom. He brought Allen's disruptive behavior to the attention of Principal Starinsky and Administrator Townsend; yet Plaintiff himself was critiqued and given poor evaluations. Plaintiff contends that Starinsky said he would be

treated differently if he were "situated as Allen." Velez mocked him and called him "blancoboy" in front of the students. Allen, Velez and other staff members frequently referred to him as a "white male cop type person who was intimidating." Plaintiff was assigned an additional unit of instruction in Algebra, beyond the time for schedule/assignment changes as set forth in the teachers' union contract. Plaintiff faced a hearing for supposedly falsifying his sick time records; and later, defended a non-renewal proceeding based upon charges of threatening students; arguing with co-workers; and failing to maintain control in his classroom. Ultimately, his full sick time benefits were returned to him and the non-renewal petition was withdrawn. Plaintiff received a "special transfer" to another school in the Cleveland Metropolitan School system, at his request. At Max Hayes, Plaintiff worked in another teacher's classroom and his salary was less than he earned at RCCA since he worked fewer days under the standard school year framework.

The Court is obligated to look at Plaintiff's work environment as a whole and to consider the totality of the surrounding circumstances and the cumulative effect of all episodes of sexual or other abusive treatment in order to determine whether the harassing conduct was "severe or pervasive" enough to affect the conditions of Plaintiff's employment. *Hampel*, 89 Ohio St. 3d at 181. However, neither R.C. § 4112.02 nor Title VII reaches disparate treatment or harassment unless it is based on Plaintiff's gender.

As for Plaintiff being called "blancoboy" and "intimidating white male cop type," these remarks reasonably refer to Plaintiff's race, which is not part of this case, or to his prior employment with the Cleveland Police Department, which is not a protected classification under Title VII or R.C. § 4112. Plaintiff points to one isolated incident where Principal

Starinsky drew a distinction between how Plaintiff might be treated by his superiors at RCCA as opposed to a female paraprofessional. "An individual does not make out a claim of sexual harassment 'merely because the words used have sexual content or connotations.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, at 80 (1998). To reiterate, "harassing conduct that is simply abusive, with no sexual element, can support a claim for hostile-environment sexual harassment if it is directed at the plaintiff because of his or her sex. However, harassment is not automatically discrimination because of sex merely because the words used have sexual content or connotations." *Hampel*, 89 Ohio St. 3d at 180.

In their totality, Plaintiff's work experiences at RCCA do not constitute a hostile discriminatory environment based upon his gender.

"Non-sexual conduct may be illegally sex-based and properly considered in a hostile environment analysis where it can be shown that but for the employee's sex, he would not have been the object of harassment. *See Williams v. General Motors Corp.*, 187 F.3d 553, 565 (6th Cir.1999)." *Bowman v. Shawnee State University*, 200 F.3d 456, 463 (6th Cir. 2000). Plaintiff has not satisfied that "but-for" burden. He offers no evidence of similarly situated female teachers who were treated more favorably.

Nor has Plaintiff demonstrated that the perceived harassment was severe and pervasive. "Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Conduct and comments

encountered by Plaintiff and directed at his gender were not frequent nor threatening, although he may have felt they were humiliating or offensive. Allen's and Velez's behavior may have been rude and impertinent. However, the Court finds that it was Allen's non-gender-based conduct, such as her refusal to cooperate, to put aside her cell phone and to support classroom proceedings that interfered with Plaintiff's ability to effectively teach his students. Such is not addressed by the remedial federal and state anti-discrimination statutes.

Moreover, even a liberal interpretation of Plaintiff's evidence leads the Court to conclude that Plaintiff fails on another element of his cause of action. He cannot prove that he was subject to an adverse employment action or decision that resulted in "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or * * * causing a significant change in benefits." *Plautz v. Potter*, 156 F.App'x 812, 817 (6th Cir. 2005), quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Plaintiff was threatened with loss of sick time benefits and with non-renewal of his contract, but neither came to fruition. A threat to discharge is not an adverse employment action. *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir.1999).

Plaintiff was transferred from RCCA to Max Hayes within the CMSD. The evidence shows that Plaintiff requested a transfer out of RCCA. (Plaintiff's email, ECF DKT #30-3 at 121); (Plaintiff's Deposition, ECF DKT #30-2 at 50).

Plaintiff's salary at Max Hayes was indeed less in total than what he earned at RCCA. However, his pay at RCCA was based upon an extended school year whereas Max Hayes operates on a standard, shorter school year.

### III. CONCLUSION

The Court finds that Plaintiff Dennis Wondrak has failed to designate specific facts or genuine material evidence in dispute; and Plaintiff has failed to satisfy his burden of proof on the elements of hostile work environment based upon gender.  Thus, Defendant Cleveland Metropolitan School District is entitled to summary judgment in its favor.

The Motion (ECF DKT #30) of Defendant Cleveland Metropolitan School District for Summary Judgment is granted and the remaining claims in Counts One, Three and Six of Plaintiff's Amended Complaint are dismissed.

**IT IS SO ORDERED.**

**DATE: January 31, 2022**

 s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**